JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| COSTLESS WHOLESALE, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM SERVICES LLC; and DOES 1–50, <br><br> Defendants. | Case No.: SACV 23-01330-CJC (JDEx) <br><br><br> ORDER GRANTING DEFENDANT AMAZON.COM SERVICE LLC'S UNOPPOSED MOTION TO COMPEL ARBITRATION [Dkt. 7] |

## I. INTRODUCTION

Plaintiff Costless Wholesale, Inc. ("Costless") sold products as a third-party vendor on Amazon.com and now brings a litany of claims against Defendant Amazon.com Services LLC ("Amazon") arising from its distributor agreement and relationship with Amazon. (Dkt. 1-1 [Compl.] ¶ 6.) Before the Court is Amazon's

motion to compel arbitration. (Dkt. 7 [hereinafter "Mot."].) Costless failed to file a timely opposition to this motion, indicating that it consents to the granting of the motion. *See* L.R. 7-12 ("The Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule. The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion[.]") For the following reasons, Amazon's unopposed motion is **GRANTED**.[1]

## II. BACKGROUND

### A. Costless's Allegations

Costless began selling its products on Amazon's website in January 2018. (Compl. ¶ 6.)[2] In conjunction with selling its products through Amazon, Costless and Amazon entered into a distributor agreement, which outlined the terms of Costless and Amazon's business relationship. (*Id.*) In that agreement, Amazon agreed to collect and provide Costless with its share of sales proceeds after subtracting the shipping costs and Amazon's share of the sales proceeds. (*Id.* ¶ 7.) Costless alleges that Amazon framed the distributor agreement as a "take it or leave it" for anyone who wanted to sell on Amazon's website and that it was "carefully drafted by Defendants to disregard their

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for October 2, 2023 at 1:30 p.m. is hereby vacated and off calendar.

[2] The timeline of Costless's activities on Amazon.com is somewhat ambiguous in the Complaint and sometimes does not seem to align with Amazon's records. For example, Amazon declares that Costless opened its seller account on May 20, 2016, (*see* Dkt. 7-1 [Declaration of Vajira Ariwaodo, hereinafter "Ariwaodo Decl."] ¶ 5), which might indicate that Costless began selling on Amazon.com earlier than alleged (though it is also possible, of course, that Costless's account remained inactive until 2018). Regardless, identifying a precise timeline of events is not material to resolution of this Motion.

obligation to give Plaintiff the benefit for which [it] had contracted with AMAZON ….." (*Id.*)

In August 2018, the California Highway Patrol ("CHP") began an investigation into Costless's business and products, which the CHP determined were possibly obtained illegally. (*Id.* ¶¶ 8, 25.) Amazon continued to sell Costless's products and collect the proceeds from such sales until October 28, 2020, (*id.* ¶ 9), but blocked Costless's account on November 20, 2020 because Amazon concluded Costless was selling fraudulently obtained goods, (*see* Ariwaodo Decl. ¶ 13). Amazon fully terminated Costless's seller account on December 18, 2020. (*Id.*) Costless alleges that Amazon's policies stated Costless "could be deprived of [its] portion of the … sales of his products … whenever AMAZON could claim that [it] had subjected AMAZON to potential liability[,]" such as the CHP's investigation of Costless. (*Id.* ¶13.) Amazon essentially agrees, citing its Anti-Counterfeiting Policy (Dkt. 7-1 Ex. D) and its Product Authenticity and Quality Policy (Dkt. 7-1 Ex. E ["Quality Policy"]), which authorizes Amazon to "suspend or block [a seller's] ability to sell" and "withhold [the seller's] payments" if a seller breaches Amazon's terms. (Quality Policy at 107; Ariwaodo Decl. ¶ 14.)

Costless also alleges that Amazon did not inform it of key contractual terms, such as this forfeiture provision, before Costless agreed to sell its products through Amazon. (Compl. ¶¶ 6–19.) Amazon, however, declares that it "provides clear notice and warning to sellers to ensure they comply with Amazon's polices related to counterfeit goods." (Ariwaodo Decl. ¶ 14.) Amazon ultimately paid Costless for goods sold through September 1, 2020, but did not pay Costless its share of the proceeds for goods sold between September 1, 2020 and October 28, 2020. (Compl. ¶ 17.)

Costless filed this action in Orange County Superior Court in March 2023, asserting claims against Amazon for breach of fiduciary duty, negligence, fraudulent

concealment, intentional misrepresentation, negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing, among other causes of action. (Compl. at 1–2.) Costless seeks to recover its share of the proceeds from Amazon's sales of its goods, punitive damages, costs and fees, and interest, as well as declaratory and injunctive relief. (*Id.* at 50–56.) Amazon timely removed on July 24, 2023 (Dkt. 1) and shortly thereafter filed this unopposed Motion.

### B. The Arbitration Agreement

Both Costless and Amazon acknowledge that they entered into a distributor agreement, which Amazon has titled the Amazon Services Business Solutions Agreement ("BSA").[3] (Compl. ¶ 6; Mot. at 1; Ariwaodo Decl. ¶¶ 4–5.) All third-party sellers must agree to abide by the BSA to register as a seller through Amazon's website. (Ariwaodo Decl. ¶ 4.) In creating its seller account, Costless therefore had to click a box affirming that it "ha[d] read and accepted the terms and conditions of the Amazon Services Business Solutions Agreement[,]" which was hyperlinked for sellers to review. (*Id.*)

The BSA (both the version Costless accepted when registering as a seller and the most recent update) includes a mandatory arbitration provision in bolded text, under which the parties "**consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court[.]**" (Dkt. 7-1 Ex. B ["2015 BSA"] ¶ 18; Dkt. 7-1 Ex. C ["2022 BSA"] ¶ 18.) "The BSA explains the process for filing a claim, the application of American Arbitration Association rules, and

---

[3] Costless alleges that it "received [the agreement] from Defendants on or about January 1, 2018[,]" (Compl. ¶ 13), while Amazon declares that Costless agreed to the terms of the agreement on May 20, 2016 when Costless created its Amazon seller account. (Ariwaodo Decl. ¶ 5.) Since "each version of the BSA throughout the life of Plaintiff's seller account" "includ[ed] the mandatory arbitration clause[,]" the exact date of Costless's assent to the BSA is not determinative.

that Amazon will reimburse for costs for claims totaling less than $10,000 unless the arbitrator finds the claim frivolous." (Ariwaodo Decl. ¶ 10; 2015 BSA ¶ 18; 2022 BSA ¶ 18.)

## III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In light of this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24–25. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). This Court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted); *see also* 9 U.S.C. § 2.

## IV. ANALYSIS

Given the lack of opposition to Amazon's Motion and the BSA's clear text, there is no dispute over whether the BSA, to which Costless electronically assented, contains a mandatory arbitration provision and whether the BSA encompasses the dispute at issue.

"The BSA also designates that the governing law includes … the laws of the State of Washington (where Amazon's principal place of business is located)." (Ariwaodo Decl. ¶ 10; 2015 BSA at 11; 2022 BSA at 11.) A "federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016). Under California's choice-of-law rules, the Court should honor the parties' choice of law if the chosen state's law bears a "substantial relationship to the parties or their transaction" and does not violate a "fundamental policy" of California. *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) (citing *Hughes Elecs. Corp. v. Citibank Del.*, 120 Cal. App. 4th 251 (2004); *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal. App. 4th 1532 (1995)). Because Amazon's principal place of business is in Washington, (*see* Ariwaodo Decl. ¶ 15), a "substantial relationship" exists to the chosen law. *See Simulados Software, Ltd. v. Photon Infotech Private, Ltd.*, 40 F. Supp. 3d 1191, 1197-98 (N.D. Cal. 2014) (collecting cases holding party has a "substantial relationship" to its state of domicile or incorporation); *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 328-29 (2015) (enforcing Washington choice of law in contract involving Washington party).

### A. Whether Valid Agreement to Arbitrate Exists

The Court finds the BSA is an enforceable "clickwrap" agreement, routinely upheld under Washington law. *See, e.g., Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was required

to agree to the Terms online"). Indeed, "courts throughout this circuit have consistently upheld arbitration provisions contained in clickwrap agreements." *In re Wyze Data Incident Litig.*, 2020 WL 6202724, at *2 (W.D. Wash. Oct. 22, 2020). Costless certified that it had "read and accepted the terms and conditions of the [BSA]" when creating its Amazon seller account and thus entered into an enforceable clickwrap agreement with Amazon. (Ariwaodo Decl. ¶ 4; Dkt. 7-1 Ex. A [Seller Agreement Page].)

And Ninth Circuit courts have specifically enforced the BSA's mandatory arbitration provision in analogous situations, compelling arbitration of claims by sellers, like Costless, against Amazon relating to their seller accounts. *See Peters v. Amazon Services, LLC*, 2 F. Supp. 3d 1165, 1170–72 (W.D. Wash. 2013), aff'd, 669 F. App'x 487 (9th Cir. 2016); *see also Shenzen Shileziyou Techs. Co. Ltd. v. Amazon.com, Inc.*, 2021 WL 5848062, at *3 (N.D. Cal. 2021); *Gilbert Enters., Inc. v. Amazon.com*, 2019 WL 6481697, at *4 (C.D. Cal. Sept. 23, 2019). In *Peters*, which also involved third-party sellers, the district court held that the plaintiffs accepted the BSA and agreed to its arbitration clause when they registered as Amazon sellers. *See* 2 F. Supp. 3d at 1170–72. The court compelled arbitration under the BSA, explaining: "There is no dispute that Plaintiffs agreed to the BSA," because "neither [plaintiff] could have opened their accounts without agreeing to the BSA." *Id.* at 1170. The Ninth Circuit affirmed, holding that the plaintiffs "agreed to [the BSA], which contains an unambiguous agreement to arbitrate '[a]ny dispute ... or claim relating in any way' to the BSA or use of Amazon's services. The BSA, as 'a contract evidencing a transaction involving commerce,' is subject to the FAA and must be enforced." 669 F. App'x at 488.

Costless alleges that the BSA is "not enforceable … due to its unconscionability or [is] void because it was against public policy." (Compl. ¶ 8.) However, Costless alleges nothing related to the BSA's arbitration provision. Under the FAA, an arbitration agreement is unenforceable when it is invalid under "generally applicable contract

defenses" recognized by state law, such as "unconscionability." *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The 2015 BSA and 2022 BSA include a severability clause, stating that "[i]f any provision of this Agreement is deemed unlawful, void, or for any reason unenforceable, then that provision will be deemed severable from these terms and conditions and will not affect the validity and enforceability of any remaining provisions." (2015 BSA at 16; 2022 BSA at 68.) Even if Costless were correct that certain elements of the BSA were unconscionable, that would not render the arbitration clause unenforceable. The Court finds nothing, nor is the Court presented with any argument, to suggest the BSA's arbitration provision is invalid—particularly given that several Ninth Circuit courts have enforced the BSA and compelled arbitration based on the very provision at issue.

### B. Whether the BSA Covers the Dispute at Issue

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)). "[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue" and must compel arbitration. *Henry Schein*, 139 S. Ct. at 530. An arbitration agreement "clearly and unmistakably" delegates arbitrability to the arbitrator when it incorporates arbitration rules that give the arbitrator the authority to decide arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Specifically, under Ninth Circuit law, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.*; *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2020 WL 13836392, at *2 (N.D.

Cal. Sept. 25, 2020) ("[T]he arbitration clause incorporates the AAA rules, and, pursuant to those rules, the arbitrability of any claim is delegated to the arbitrator"). Here, the BSA expressly incorporates the AAA rules, providing that "arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules." (Ariwaodo Decl. ¶ 10, 2015 BSA ¶ 18.) Ninth Circuit precedent thus requires that an arbitrator decide any arbitrability challenges Costless might raise.

Beyond the threshold issue of arbitrability, Costless's claims also fall within the scope of the BSA. That agreement encompasses "any dispute with Amazon or its Affiliates or claim relating in any way to [the BSA] or [Costless's] use of [Amazon's] Services." (Ariwaodo Decl. ¶ 8, 2015 BSA ¶ 18.) "All-disputes" clauses of this sort are "broad and far reaching" in scope. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1131 (9th Cir. 2000). Such clauses require arbitration of all disputes that "touch matters" covered by the parties' contract. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Furthermore, "[i]n the absence of any express provision excluding a particular grievance from arbitration … only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).

Here, Costless has a "dispute with Amazon," and its "claim[s] relat[e] … to [the BSA and Costless's] use of [Amazon's] Services." (Ariwaodo Decl. ¶ 8, 2015 BSA ¶ 18.) The BSA's arbitration provision plainly covers Costless's claims, which arise out of its activity as a third-party seller on Amazon.com and Amazon's alleged breach of the BSA. (*See* Compl. ¶¶ 178–194.)

**C. Dismissal**

Amazon requests that the Court dismiss this case if it compels arbitration. (Mot. at

14.) When "all of the claims raised" are subject to arbitration, the court has discretion to dismiss the action. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014); *Castaldi v. Signature Ret. Servs., Inc.*, 2016 WL 7042991, at *1 (N.D. Cal. Jan. 20, 2016) (dismissing action where "all of the claims asserted in [the] case must be arbitrated, leaving no claims to be resolved following arbitration."); *Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020, at *10 (N.D. Cal. June 11, 2014) ("[B]ecause the Court finds that all the issues in this case are arbitrable … the case will be dismissed."). "Accordingly, because the Court finds that all the issues in this case are arbitrable (and [Costless] has not argued otherwise), the case will be dismissed." *Jones-Mixon v. Bloomingdale's, Inc.*, 2014 WL 2736020, at *10 (N.D. Cal. June 11, 2014).

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is **GRANTED**, and the case is **DISMISSED WITHOUT PREJUDICE.**

DATED:   September 20, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE